

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA         :     INDICTMENT

        - v. -                  :     13 CRIM 339

DAVID RILEY, and                 :
MATTHEW TEEPLE,
                               :

        Defendants.

- - - - - - - - - - - - - - - - X

## COUNT ONE

(Conspiracy to Commit Securities Fraud)

The Grand Jury charges:

### Relevant Entities and Individuals

1. At all times relevant to this Indictment, DAVID RILEY, the defendant, was a Vice-President and the Chief Information Officer ("CIO") at Foundry Networks, Inc. ("Foundry"). Headquartered in Santa Clara, California, Foundry was a technology company specializing in networking hardware, and was listed on the Nasdaq Stock Market under the ticker symbol "FDRY." Foundry's policies prohibited the unauthorized disclosure of Foundry's confidential information, including material non-public information ("Inside Information").

2. Starting in or about 2007, MATTHEW TEEPLE, the defendant, was employed as an analyst for an investment adviser for a family of related hedge funds ("Investment Adviser A"). Investment Adviser A had its headquarters and principal place of

business in San Francisco, California. Investment Adviser A used a prime broker located in New York, New York, among other things, to trade shares of Foundry. As an analyst at Investment Adviser A, TEEPLE's responsibilities included researching publicly traded companies (particularly in the semiconductor and networking industries) and providing this research to Investment Adviser A's analysts and portfolio managers. Between in or about 2005 and in or about 2007, TEEPLE worked at a company that provided primary research and industry information to various clients, including Investment Adviser A.

   3.   Since in or about 2003, John Johnson was an acquaintance of MATTHEW TEEPLE, the defendant. Johnson had various professional contacts with TEEPLE since approximately 2005, when Johnson worked at a mutual fund (the "Mutual Fund"), and TEEPLE worked at a company that provided primary research to the Mutual Fund. During the time that Johnson was employed by the Mutual Fund, TEEPLE provided him with confidential, non-public information about Foundry, among other companies. After leaving the Mutual Fund, Johnson continued to have regular contact with TEEPLE.

   4.   At all times relevant to this Indictment, Karl Motey was an acquaintance of MATTHEW TEEPLE, the defendant. Motey founded a research consulting company and often

communicated with TEEPLE about various stocks, including Foundry.

5.  At all times relevant to this Indictment, Brocade Communications Systems, Inc. ("Brocade"), headquartered in San Jose, California, was a technology company specializing in data and storage networking products, and was listed on the Nasdaq Stock Market under the ticker symbol "BRCD."

6.  On July 21, 2008, Foundry and Brocade publicly announced that Brocade would acquire Foundry. According to the public announcement, Brocade agreed to pay a combination of $18.50 cash plus 0.0907 shares of Brocade stock for each share of Foundry stock.

### The Insider Trading Scheme

7.  From in or about 2005 through in or about June 2009, MATTHEW TEEPLE, the defendant, received Inside Information about Foundry from DAVID RILEY, the defendant. Specifically, RILEY obtained Inside Information regarding Foundry through the course of his employment as a Vice-President and the CIO of Foundry, including confidential and material financial information and information concerning an eventual acquisition of Foundry by Brocade. RILEY provided Inside Information to TEEPLE in violation of (i) fiduciary and other duties of trust and confidence owed by RILEY to Foundry; (ii) expectations of

confidentiality held by Foundry; (iii) written policies of Foundry regarding the use and safekeeping of confidential business information; and (iv) agreements between Foundry and its employees to maintain information in confidence. TEEPLE, in turn, caused others, including Investment Adviser A, to execute securities transactions based in whole or in part on the Inside Information RILEY had provided to him. These trades earned Investment Adviser A profits of over $16 million and enabled Investment Adviser A to avoid losses in excess of $11 million.

### Foundry's April 11, 2008 Announcement

8. On April 11, 2008, Foundry publicly announced that it expected its quarterly financial reporting to fall short of Wall Street expectations (the "April 11, 2008 Announcement"). DAVID RILEY, the defendant, in his capacity as CIO of Foundry, had access to Inside Information contained in the April 11, 2008 Announcement before it became public. RILEY provided this Inside Information to MATTHEW TEEPLE, the defendant, in advance of the April 11, 2008 Announcement. As set forth below, TEEPLE then caused Investment Adviser A to execute transactions in securities of Foundry based in whole or in part on this Inside Information:

   a. On April 3, 2008, at approximately 8:03 a.m., RILEY placed a telephone call to TEEPLE that lasted

approximately one minute.

    b. On April 3, 2008, at approximately 9:40 a.m., TEEPLE placed a telephone call to an analyst with Investment Adviser A (the "Investment Adviser A Analyst") that lasted approximately 14 minutes.

    c. The same day, April 3, 2008, at approximately 10:03 a.m., Investment Adviser A began short selling call option contracts for Foundry, which is consistent with a belief that the price of the stock will decrease. By the end of the trading day on April 4, 2008, Investment Adviser A had sold short more than 12,000 call option contracts for Foundry. On April 9, 2008, Investment Adviser A sold short approximately 3,310 more call option contracts for Foundry.

    d. On April 3, 2008 and April 4, 3008, Investment Adviser A also sold short more than 1.8 million shares of Foundry at an average price of $12.29, which also is consistent with a belief that the price of the stock will decrease.

    9. From April 3, 2008 -- the date on which Investment Adviser A began short selling call option contracts in Foundry and Foundry stock — until the April 11, 2008 Announcement, the closing stock prices for Foundry stock dropped, from a high of $12.41 on April 3, 2008 to a low of $11.04 on April 11, 2008.

As a result of the trading before the April 11, 2008 Announcement as set forth above, Investment Adviser A profited in the amount of approximately $2.6 million.

### Announcement of Brocade's Acquisition of Foundry

10. On July 21, 2008, Brocade publicly announced that it would be acquiring Foundry. By on or about July 1, 2008, DAVID RILEY, the defendant, in his capacity as CIO of Foundry, was informed that Foundry was going to be acquired by Brocade (the "Foundry Acquisition Inside Information"). RILEY provided the Foundry Acquisition Inside Information to MATTHEW TEEPLE, the defendant, before it became public. As set forth below, TEEPLE then caused others, including Investment Adviser A and John Johnson, to execute securities transactions in Foundry and Brocade based in whole or in part on the Foundry Acquisition Inside Information:

    a. On July 16, 2008, at approximately 8:02 a.m., RILEY placed a telephone call to TEEPLE and had a conversation that lasted approximately 41 seconds.

    b. On July 16, 2008, at approximately 9:48 a.m., TEEPLE placed a telephone call to the Investment Adviser A Analyst. The ensuing conversation lasted approximately 4 minutes. At approximately 9:50 a.m. — while TEEPLE and the Investment Adviser A Analyst were still on the telephone —

6

Investment Adviser A began purchasing shares in Foundry. From July 16, 2008 until the public anncuncement of the Foundry Acquisition Inside Information, Investment Adviser A purchased approximately 3,245,380 shares of Foundry. In addition, at approximately 9:56 a.m. on July 16, 2008, Investment Adviser A began buying call option contracts for Foundry and selling put option contracts for Foundry, which were trades consistent with a view that the share price of the stock will increase.

    c. On July 18, 2008, at approximately 8:50 a.m., John Johnson placed a telephone call to TEEPLE and had a conversation that lasted approximately 28 minutes. In this conversation, TEEPLE told Johnson that Foundry would be acquired by Brocade and the approximate price of the acquisition. During this call, at approximately 9:10 a.m., Johnson began buying 3,900 shares of Foundry in multiple accounts that he controlled. At approximately 9:26 a.m. the same day, Johnson purchased 325 Foundry call options, and sold short 1,200 shares of Brocade.

    11. MATTHEW TEEPLE, the defendant, also provided the Foundry Acquisition Inside Information to Karl Motey, prior to it becoming public, as set forth below:

    a. On July 18, 2008, at approximately 10:04 a.m., Motey called TEEPLE and had a conversation that lasted approximately 27 minutes. Immediately after this call, at

approximately 10:31 a.m., Motey called TEEPLE again and had a conversation that lasted another approximately 13 minutes.

   b. On or about July 18, 2008, and as memorialized in a notebook Motey maintained for this business, TEEPLE told Motey that Foundry might be acquired by Brocade, and provided Motey with the approximate price of the acquisition. The acquisition price provided by TEEPLE was substantially similar to the numbers Brocade ultimately provided in its July 21, 2008 announcement of the acquisition.

   12. On July 21, 2008, at the end of regular market trading, Brocade announced that it had signed a definitive merger agreement to purchase Foundry for a combination of $18.50 per share, plus 0.0907 shares of Brocade stock for each share of Foundry stock (an aggregate purchase price of approximately $3 billion).

   13. From the close of trading on July 21, 2008 to the close of trading on July 22, 2008, the price of Foundry stock increased approximately 32 percent. Specifically, on July 21, 2008, the Foundry closing stock price was $13.66, and on July 22, 2008, the Foundry closing stock price was $18.08. Moreover, from July 16, 2008 — the day that DAVID RILEY, the defendant, spoke on the telephone with MATTHEW TEEPLE, the defendant — to July 22, 2008, Foundry's closing stock price increased from

$12.49 to $18.08.

14. As a result of trading on the Foundry Acquisition Inside Information, Investment Adviser A and John Johnson profited enormously. Specifically, Investment Adviser A profited in the amount of approximately $13.6 million. Investment Adviser A also avoided losses of approximately $7.4 million that it would have incurred due to its prior short equity and options positions. Johnson profited in excess of approximately $136,000 from his trades in Foundry and Brocade securities and options.

Foundry's October 2008 Announcements

15. In October 2008, Foundry made two negative announcements. First, on October 23, 2008, after the end of the trading day, Foundry announced its third quarter financial results for 2008 (the "October 23, 2008 Announcement"). Among other things, Foundry announced that its net operating income was $10 million less than it had been for the same quarter in 2007. Second, on October 24, 2008, Foundry announced that a shareholder vote to approve the Brocade acquisition (scheduled for that same day) would be delayed until October 29, 2008 (the "October 24, 2008 Announcement"). The reason given for this delay was "recent developments related to the transaction." DAVID RILEY, the defendant, in his capacity as CIO of Foundry,

9

had access to Inside Information contained in the October 23 and 24, 2008 Announcements before it became public.

16. DAVID RILEY, the defendant, provided this Inside Information to MATTHEW TEEPLE, the defendant, in advance of the October 23 and 24, 2008 Announcements. As set forth below, TEEPLE then caused Investment Adviser A to execute transactions in securities of Foundry based in whole or in part on this Inside Information:

a. On October 16, 2008, at approximately 8:02 a.m., MATTHEW TEEPLE, the defendant, placed a telephone call to DAVID RILEY, the defendant, and had a conversation that lasted approximately 22 seconds.

b. On October 16, 2008, shortly after the telephone call between TEEPLE and RILEY, TEEPLE had two telephone conversations with the Investment Adviser A Analyst. These telephone calls occurred at approximately 9:24 a.m. and 11:46 a.m., and lasted approximately 16 minutes and 9 minutes, respectively.

c. The same day — on October 16, 2008 — and starting at about 15 minutes after the 11:46 a.m. conversation between TEEPLE and the Investment Adviser A Analyst, Investment Adviser A sold approximately 1,161,222 shares of Foundry, which is consistent with a negative outlook on the company.

17. After the October 23 and 24, 2008 Announcements, consistent with their negative nature, Foundry's stock price fell. While the price was $17.04 at market close on October 23, 2008, the price fell to $12.67 at the market close on October 24, 2008. As a result of its trades that were executed on October 16, 2008, Investment Adviser A avoided at least approximately $4.3 million in losses by selling Foundry stock.

### Statutory Allegations

18. From in or about 2005 through in or about June 2009, in the Southern District of New York and elsewhere, DAVID RILEY and MATTHEW TEEPLE, the defendants, and others known and unknown, willfully and knowingly did combine, conspire, confederate and agree together and with each other to commit an offense against the United States, to wit, securities fraud, in violation of Title 15, United States Code, Sections 78j(b) and 78ff, and Title 17, Code of Federal Regulations, Sections 240.10b-5 and 240.10b5-2.

19. It was a part and object of the conspiracy that DAVID RILEY and MATTHEW TEEPLE, the defendants, and others known and unknown, willfully and knowingly, directly and indirectly, by the use of means and instrumentalities of interstate commerce, and of the mails, and of facilities of national securities exchanges, would and did use and employ, in

connection with the purchase and sale of securities, manipulative and deceptive devices and contrivances in violation of Title 17, Code of Federal Regulations, Section 240.10b-5 by: (a) employing devices, schemes and artifices to defraud; (b) making untrue statements of material fact and omitting to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and (c) engaging in acts, practices and courses of business which operated and would operate as a fraud and deceit upon persons, all in violation of Title 15, United States Code, Sections 78j(b) and 78ff, and Title 17, Code of Federal Regulations, Sections 240.10b-5 and 240.10b5-2.

**Means And Methods Of The Conspiracy**

20. Among the means and methods by which DAVID RILEY and MATTHEW TEEPLE, the defendants, and others known and unknown, would and did carry out the conspiracy were the following:

   a. In his capacity as a Vice President and CIO at Foundry, RILEY obtained Inside Information regarding Foundry, including confidential information concerning an eventual acquisition of Foundry by Brocade.

   b. RILEY provided Inside Information relating to Foundry to TEEPLE, in violation of fiduciary and other duties

12

of trust and confidence owed by RILEY to Foundry. In or about the same time, and in exchange for Inside Information on Foundry, TEEPLE provided RILEY with tips on other stocks.

    c. TEEPLE caused others, including Investment Adviser A and John Johnson, to execute securities transactions based in whole or in part on the basis of the Inside Information provided by RILEY.

### Overt Acts

21. In furtherance of the conspiracy and to effect the illegal object thereof, DAVID RILEY and MATTHEW TEEPLE, the defendants, and their co-conspirators committed the following overt acts, among others, in the Southern District of New York and elsewhere:

    a. On or about July 16, 2008, at approximately 8:02 a.m., RILEY placed a telephone call to TEEPLE.

    b. On or about July 16, 2008, at approximately 9:48 a.m., TEEPLE placed a telephone call to the Investment Adviser A Analyst.

    c. On or about July 16, 2008, at approximately 9:50 a.m., Investment Adviser A, through its prime broker located in New York, New York, purchased securities of Foundry.

    d. On or about June 16, 2009, TEEPLE met with RILEY in San Jose, California.

(Title 18, United States Code, Section 371.)

## COUNTS TWO THROUGH FOUR

(Securities Fraud)

The Grand Jury further charges:

22. The allegations contained in Paragraphs 1 through 17, 20, and 21 are repeated and realleged as though fully set forth herein.

23. On or about the dates set forth below, in the Southern District of New York and elsewhere, DAVID RILEY and MATTHEW TEEPLE, the defendants, willfully and knowingly, directly and indirectly, by the use of means and instrumentalities of interstate commerce, the mails and the facilities of national securities exchanges, in connection with the purchase and sale of securities, did use and employ manipulative and deceptive devices and contrivances, in violation of Title 17, Code of Federal Regulations, Section 240.10b-5, by (a) employing devices, schemes and artifices to defraud; (b) making untrue statements of material fact and omitting to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and (c) engaging in acts, practices and courses of business which operated and would

14

operate as a fraud and deceit upon persons, to wit, on the basis of material, non-public information that RILEY disclosed to TEEPLE, in violation of RILEY's fiduciary and other duties of trust and confidence owed to Foundry, TEEPLE caused the securities transactions listed below to be executed in certain accounts affiliated with Investment Adviser A.

| Count | Date | Transaction |
|---|---|---|
| 2 | April 3, 4, 9, 2008 | Sold short over approximately 15,000 Foundry call options, and sold short over approximately 1,800,000 shares of Foundry |
| 3 | July 16, 17, 18, 21, 2008 | Purchased approximately 3,245,380 shares of Foundry |
| 4 | October 16, 2008 | Sold over approximately 1,100,000 shares of Foundry |

(Title 15, United States Code, Sections 78j(b) & 78ff; Title 17, Code of Federal Regulations, Sections 240.10b-5 and 240.10b5-2; and Title 18, United States Code, Section 2.)

## FORFEITURE ALLEGATION

24.  As a result of committing one or more of the foregoing securities fraud offenses alleged in Counts One, Two, Three, and Four of this Indictment, DAVID RILEY and MATTHEW TEEPLE, the defendants, shall forfeit to the United States pursuant to Title 18, United States Code, Section 981(a)(1)(c) and Title 28, United States Code, Section 2461, all

15

property, real and personal, that constitutes or is derived from proceeds traceable to the commission of the securities fraud offenses, including but not limited to a sum of money in United States currency which was derived from proceeds traceable to the commission of the securities fraud offenses.

### Substitute Assets Provision

25. If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty; it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the

defendants up to the value of the forfeitable property described above.

(Title 18, United States Code, Section 981;
Title 28, United States Code, Section 2461; and Title 15, United States Code, Sections 78j(b) and 78ff; Title 17, Code of Federal Regulations, Section 240.10b-5 and 240.10b5-2; and Title 18, United States Code, Sections 371 and 2.)

_____ 5/8/2013
FOREPERSON

_____
PREET BHARARA
United States Attorney

17

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

- v. -

DAVID RILEY, and
MATTHEW TEEPLE,

Defendants.

### INDICTMENT

13 Cr. ___

(Title 18, United States Code, Section 371,
Title 15, United States Code, Sections 78j(b) and 78ff)

PREET BHARARA
United States Attorney.

A TRUE BILL

Foreperson.

_____

5/8/13 Filed Indictment.
dc   Case assigned to Judge Patterson.
     Judge Autrey
              Gorenstein.
     USMJ