

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

June 5, 2014

**BY EMAIL & ECF**

The Honorable Robert P. Patterson
United States District Judge
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street, Suite 2550
New York, New York 10007

   Re: **United States v. David Riley, 13 Cr. 339 (RPP)**

Dear Judge Patterson:

  This letter responds to defendant David Riley's letter of yesterday requesting yet another adjournment of trial in this matter, which is scheduled to commence July 7. The Government urges the Court to deny this request, which is the third of its kind in as many months. Riley has been granted more than ample time to prepare his defense in what promises to be a straightforward, relatively short trial.

**A.** **Background**

  Riley and his co-defendant, Matthew Teeple, were arrested in March 2013 on insider trading charges centered principally on the securities of Foundry Networks, Inc. ("Foundry") in 2008. In December 2013, following intensive pretrial motion practice, the Court set a trial date of April 14, 2014. As that date approached, the trial was pushed back to April 23, 2014.

  i. The First Adjournment Motion

  In March, shortly after the Government had produced its initial exhibit and witness lists, both defendants requested an adjournment of the April 23 date, asserting that they would otherwise have insufficient time to process certain discovery productions that had been made before the Government's pretrial disclosures. During the April 1 oral argument on the defense adjournment motions, the Court stated that it was disinclined to grant any adjournment:

> Now, I granted the defense [early disclosures] from the government on the theory that it would result in the defense being able to solidify its case and be sure of where the government was going and thereby enable them to better prepare for trial. But, instead, what it seems to have done is opened a Pandora's box of other matters that the defense now wishes to look into. And I think

> the April 23 date as a trial date is adequate time for them to make their decisions as to where they want to look. . . .

(Tr. of Proceedings dated Apr. 1, 2014 ("Apr. 1 Tr."), at 107.) The Court indicated that it "sympathized" with Riley's counsel, "who is in a smaller firm," "but I don't think I can grant an adjournment." (*Id.*)

Riley's counsel then implored the Court to reconsider, assuring that "if your Honor were to grant an adjournment, unless some extraordinary reason came up, I wouldn't be back [to request another adjournment]." (*Id.* at 109.) Counsel continued, saying he was not "'Too Proud to Beg," and insisting he could not try the case without more time. (*Id.*; *see also id.* at 87-88 ("[T]here comes a point in time where your back gets broke, and it keeps piling on. You think you're super man. . . . It's just not possible.").) Riley's counsel asked for a six-week adjournment, to June 9. (*Id.* at 111.)

Responding to this, the Court observed that six weeks was "a long time," reiterated its disinclination to grant an adjournment, but suggested that the Government might want to consent to a short adjournment in exchange for early defense disclosures. (*Id.* at 111, 113.) The Government then conferred with defense counsel and proposed a new trial date of May 19, 2014, with defense exhibit and witness lists due three weeks before trial. Because this proposal was made without the benefit of consultation with expected witnesses, the Government was unaware at the time that the new schedule would prevent the testimony of a key Government witness. When that became clear, the Government proposed—and the defense agreed to—a trial date of May 27, 2014.

ii. The Second Adjournment Motion

The Court's worry during the April 1 oral argument that granting an adjournment might spawn more defense requests for adjournments proved prescient. On April 29, a full two weeks earlier than it had undertaken to do so, the Government supplied defendants with a revised bill of particulars. The principal amendments were the addition of allegations that Riley had passed material, non-public information to Teeple—still about Foundry only, and still squarely within the timeframe of the conspiracy that had been first charged back in 2013—on three occasions beyond those alleged in the Superseding Indictment and the original bill of particulars. The trading and telephone records relating to these trades had been produced to the defense nearly a year before. Nonetheless, citing the new allegations, the defendants again moved for an adjournment of the trial date. They claimed that they and their expert needed additional time to analyze the data relating to the three newly identified dates, and that they wanted time to secure (if necessary, through a Rule 17(c) subpoena to Teeple's former employer, Investment Adviser A) and process instant message traffic surrounding a date in September 2007 that was among the three the Government identified on April 29 as involving passage of inside information.[1] Riley's

---

[1] The Government is unaware of any such subpoena having been served. At the May 12 conference, Riley's counsel represented that the defense had requested the subject materials from Investment Adviser A pursuant to their joint defense agreement. (Tr. of Proceedings dated May

counsel cited another basis for the delay: that Riley's father had been diagnosed with congestive heart failure. (*See* May 12 Tr. at 31.) After noting that the requested 60-day adjournment was "really wild" (*id.* at 27), the Court, following some colloquy about witness availability and other scheduling issues, granted a six-week adjournment, to July 7.

**B.     Discussion**

The Court should deny Riley's latest motion for adjournment, made by letter yesterday, and should adhere to the July 7 trial date—which, as discussed, is itself the product of substantial defense-requested delay. The grounds Riley now offers simply do not support further delay.

Unable this time to cite any action of the Government to justify a request for more time, Riley seizes upon on the action of his co-defendant, Teeple—namely, Teeple's entry last week of a plea of guilty. As the Court is aware, Teeple admitted during his allocution that Riley repeatedly passed material, non-public information to him about Foundry on several occasions throughout 2008, while Riley was employed as Foundry's Chief Information Officer, including the information that Foundry was going to be acquired by Brocade Communications, Inc. at a particular approximate price. Riley claims that Teeple's plea "changes the complexion of the case substantially," and cites additional work that Riley's counsel will have to undertake now that Teeple's counsel will not be present to assist, including work related to expert and summary witness preparation, preparation for cross-examination of Government witnesses, and interviews of witnesses who had appeared on Teeple's witness list.

Contrary to Riley's suggestion, Teeple's plea does not "chang[e] the complexion of the case." The case the Government will present is the same—the same witnesses, the same exhibits, the same arguments—as would have been presented in a case against two defendants. As for the facts that Riley's counsel can no longer expect to share the burden of cross-examining Government witnesses, and that Riley's counsel may want to personally interview certain witnesses that Teeple had planned to call, these are adjustments that can be made within the time already allotted. We are, after all, still a full month out from trial, and Riley's counsel has known for nearly two weeks that Teeple would plead guilty. Similarly, a month is certainly sufficient to prepare a replacement for the "summary" witness whom Teeple evidently had planned to prepare and call—which the Government understands was an associate of the law firm representing Teeple.

Next, Riley's complaints about preparing an expert in trading records ring hollow. Although he questions whether he will be able to use the expert that he and Teeple had been planning to call before Teeple pleaded guilty, he offers no reason why that would be in doubt, and gives no indication that he has even explored the possibility to date. Even assuming that for some reason Riley would be precluded from calling this expert himself, any new expert Riley might hire would hardly have to start from scratch. Presumably, if analysis of trading records were a key element of Riley's defense, counsel is already familiar with the prior expert's work

---

12, 2014 ("May 12 Tr."), at 55.) The Government, again, is unaware of any effort by the defense to compel or speed production of those materials in the several weeks since the last conference.

and analysis. In any event, as Riley's counsel has repeatedly represented to the Court, he and his client have personal familiarity with the trading and other related records, as they have invested very substantial work analyzing those records themselves. Their need to continue this personal, in-depth analysis was the main reason Riley's counsel gave for why he and Riley needed an adjournment of the May 27 trial date. (*See* May 12 Tr. at 29, 32, 33.) They got a lengthy adjournment on that basis. Any expert Riley wishes to retain will have the benefit of the extensive analysis Riley and his counsel conducted both before the May 12 conference and in the several weeks since. That expert will also, of course, have the month that remains between now and the July 7 trial date to process the information himself.

Finally, regarding the witness availability issue Riley identifies, this is the first the Government is hearing of it. A written request to counsel yesterday that he identify the witness in question remains unanswered. In any event, this issue hardly appears to warrant an adjournment. The parties should be able to work out the matter under the current schedule.[2]

Put simply, trial here has already been delayed too long. Riley was arrested over a year ago, and a trial date set in December 2013 has already been pushed back several times. Substantial government resources have been expended in repeatedly ramping up for new trial dates. The two prior adjournments posed problems in scheduling Government witnesses—problems that, fortunately, were able to be worked out, but that might prove more intractable if yet another adjournment were granted. Many of the Government's witnesses are traveling from out of town, and all of them have been planning their lives with the July 7 trial date in mind.

Meanwhile, the defense has had a roadmap to the Government's case since March, when they received the Government's initial exhibit and witness lists. Nearly a month ago, the Government even provided the defense with extensive advance 3500 material—specifically, all of the prior statements of the two cooperating witness and a witness for whom the Government has sought immunity. Rarely does a defendant get as much time as has been granted already in this case to process the Government's evidence and trial strategy, and to prepare his defense. No more time is needed. Moreover, there is no need for oral argument on Riley's motion. The

---

[2] Other, personal reasons Riley cites in support of his adjournment request relate to his father's health—an issue raised in support of the last adjournment request—and the fact that he has recently decided to move to North Carolina. Neither of these points justifies further adjournment, and neither issue would in any event be resolved by the requested adjournment.

Court can and should deny Riley's adjournment request on the papers, so that the parties may proceed without continued uncertainty and devote their resources fully to preparing for trial.

        Respectfully submitted,

        PREET BHARARA
        United States Attorney for the
        Southern District of New York

By: ____/s/_____
        Telemachus P. Kasulis
        Sarah E. McCallum
        Assistant United States Attorneys
        (212) 637-2411 / 1033

        Michael P. Holland
        Special Assistant United States Attorney

cc:    John Kaley, Esq. (by email)