USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:__7/14/2014

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- X
UNITED STATES OF AMERICA,                   :
                                            :          13-CR-339 (VEC)
           -against-                        :
                                            :          MEMORANDUM
DAVID RILEY,                                :             ORDER
                              Defendant.    :
------------------------------------------------------------- X

VALERIE CAPRONI, United States District Judge:

       The Government and Defendant David Riley move *in limine* for ten evidentiary rulings

prior to Riley's September 8, 2014 trial.  The Government moves to (1) exclude evidence of

Riley's specific good acts; (2) exclude analyst and news reports post-dating public

announcements of Foundry's activities; (3) exclude arguments regarding possible punishment;

and (4) preclude the argument that failure to use particular investigative techniques mandates a

not-guilty verdict.  With certain caveats discussed below, the Government's motions are

GRANTED.  Riley moves to (1) exclude evidence of former codefendant Matthew Teeple's

other bad acts; (2) exclude evidence of Riley's trades in Marvell, sTec, Palm and Motorola; and

(3) exclude recorded conversations between Teeple and Karl Motey.  Riley also joins motions

that Teeple filed prior to pleading guilty, including motions to (1) exclude Investment Advisor

A's January 28, 2009 response to an inquiry from the Securities and Exchange Commission

("SEC"); (2) exclude Foundry's and Investment Advisor A's compliance policies; and (3)

exclude evidence in support of the Government's theory of liability under 18 U.S.C. § 2(b).[1]

With limits discussed below, these motions are DENIED.

---

[1]     The Court understands that the parties have reached an agreement as to what evidence related to Teeple's compensation structure at Investment Advisor A may be admissible.

## DISCUSSION

**Government Motions**

**1.  Riley is precluded from adducing evidence of his own "good acts"**

The Government moves to preclude Riley from introducing evidence of his prior "good acts."  The scope of the disagreement between the parties, if any, is slight.  The Government concedes the admissibility of evidence as to Riley's pertinent character traits.  *See* Gov't Br. at 3; *see also* Fed. R. Evid. 404(a)(2)(A), 405(a).   It argues only that Riley's evidence should take the form of reputation and opinion testimony, rather than testimony as to specific instances in which Riley behaved in conformity with the particular character trait.  Riley responds that he should be permitted to adduce evidence of his own good character.  Both sides are correct.  Riley may adduce evidence of his reputation and witnesses may testify regarding their opinions of his good character; these witnesses may, as Riley argues, testify as to the nature of their relationship with Riley (including shared employment at the Air Force or the Central Intelligence Agency).  Testimony regarding particular occasions on which Riley behaved in conformity with his purported traits – attesting that he supposedly kept a particular secret, for example – is inadmissible.  *United States v. Wilson*, 586 F. Supp. 1011, 1016 (S.D.N.Y. 1983) (Weinfeld, *J.*), *aff'd*, 750 F.2d 7 (2d Cir. 1984) ("Defendant has stated an intention to introduce evidence of certain character traits, and such proof is allowed by the Rules of Evidence.  Those rules, however, do not permit evidence of specific acts to be admitted to prove character traits as part of an affirmative defense.") (footnote omitted).

Riley may also introduce evidence that some of his communications with Teeple during the course of the charged conspiracy were innocent.  The Government asserts that it will "not object to admission of evidence concerning meetings and phone calls between defendants during

the course of the conspiracy that the Government has *not* alleged involved passage of inside information."  Gov't Reply at 3 (emphasis in original).[2]  Beyond these two categories of uncontested evidence, evidence of Riley's specific good acts is inadmissible.[3]

### 2. Riley is precluded from offering analyst reports post-dating relevant announcements to show the state of the market pre-announcement

The Government moves to exclude analyst and other public reports that post-date announcements related to the Brocade-Foundry merger and other relevant events.  Riley asserts that such articles are relevant because they "reflect facts, views and opinions as they existed before the announcement."  Riley Opp. at 8.  Insofar as the reports are offered for the purposes of discussing what was "in the public square," *id.*, *prior* to the announcement – either "projections" or "facts, views and opinions" pre-announcement – they are either irrelevant or hearsay.  The reports are hearsay if the jury is expected to infer that they reflect pre-announcement thinking from the fact that the reports say so.  In that case, their relevance hinges directly on the truth of the matter asserted.  Fed. R. Evid 801(c).  If the post-announcement reports purport to identify pre-announcement synergies that militated in favor of a merger, this too is hearsay – the reports would be being offered to prove the truth of their contents.  On the other hand, post-announcements reports that do *not* purport to discuss information that was known prior to the public announcement are irrelevant as to all trading behavior that occurred pre-announcement. *In re Bankatlantic Bancorp, Inc. Secs. Litig.*, No. 07-61542-civ, 2010 WL 6363028, at *2 (S.D. Fla. Oct. 8, 2010).  If Riley seeks to admit post-announcement reports for something other than

---

[2]    The Court understands the Government's concession to mean that it will not object if Riley introduces evidence that there were meetings and telephone calls between the two in which nothing untoward occurred.  The Court does not understand the Government to concede that Riley can introduce the agenda of every telephone call and meeting between Riley and Teeple that did not involve criminal conduct.

[3]    In light of this discussion, the parties are directed to confer again regarding the necessity of a hearing pursuant to Section 6 of the Classified Information Procedures Act, 18 U.S.C. app. 3 § 1 *et seq.*  The parties are directed to inform the Court whether they require such a hearing not later than July 21, 2014.

the truth of the matters that they assert or the status of the market pre-announcement, the Court will review their admissibility on a case-by-case basis.   Insofar as some reports post-date one transaction but contain relevant information about the state of the market prior to another transaction at issue, these reports may be admissible for the latter purpose; the Court will address the admissibility of any such reports on a case-by-case basis.

**3.   Riley is precluded from referring to the consequences he would face if convicted**

The Government moves to preclude Riley from mentioning the consequences that he would face if convicted.  *See Shannon v. United States*, 512 U.S. 573, 579 (1994).  This motion is granted, although Riley may of course cross-examine cooperating witnesses about the penalties that such witnesses face (or would have faced but for their decision to cooperate) and the benefits that they hope to gain by cooperating.  *See, e.g., United States v. Projansky*, 465 F.2d 123, 136 (2d Cir. 1972).

**4.   Riley is precluded from arguing that failure to employ particular investigative techniques mandates a not guilty verdict as a matter of law**

The Government finally moves to preclude Riley from arguing "that the Government's failure to adduce a particular kind of evidence (for example, wiretap calls) compels a not guilty verdict as a matter of law."  Gov't Br. at 10.  Riley does not meaningfully contest this motion. The Government "has no duty to employ in the course of a single investigation all of the many weapons at its disposal, and [] the failure to utilize some particular technique or techniques does not tend to show that a defendant is not guilty of the crime with which he has been charged." *United States v. Saldarriaga*, 204 F.3d 50, 53 (2d Cir. 2000) (*per curiam*).  Riley may, as the Government concedes, argue that "the absence of certain kinds of evidence . . . furnishes a basis for reasonable doubt."  Gov't Reply at 5.  But Riley is precluded from arguing that the jury must

acquit Riley because the Government did not introduce wiretap recordings of his conversations with Teeple.

**Riley's Motions**

1. **Teeple's exchange of MNPI with co-conspirators is relevant and admissible to prove the existence and scope of the conspiracy and the benefits Riley obtained**

Riley moves to exclude evidence of Teeple's uncharged exchanges of MNPI in companies other than Foundry and Brocade.  Riley's argument, submitted prior to Teeple's guilty plea, baldly asserts that "none of the proffered 404(b) evidence would be admissible in a trial of Mr. Riley alone," as it relates to Teeple's communications with individuals other than Riley.  Riley Br. at 2.  The Government argues that evidence of Teeple's exchanges of MNPI relating to companies other than Foundry is admissible both as direct evidence of the conspiracy and as background evidence tending to show the relationship of trust among co-conspirators.

As the Court understands the Government's likely proof, it intends to show that Teeple and various conspirators (other than Riley) had a history of exchanging confidential non-public information (some of it material) regarding a variety of companies.  It also intends to show that Riley benefitted from passing MNPI to Teeple by Teeple's providing him stock advice, including advice that involved the companies about which Teeple had received confidential nonpublic information (some of it material) from his other conspirators.

With that understanding of the case, certain aspects of the disputed evidence are directly admissible as evidence of what Riley gained from his participation in the conspiracy.  *See Dirks v. S.E.C.*, 463 U.S. 646, 662 (1983).  The Government intends to argue, for example, that Riley traded in Marvell and Palm based on Teeple's advice and that Teeple's advice was a *quid pro quo* for Riley's tips regarding Foundry and Brocade.  Gov't Opp. at 13.  Further, the Government will argue that Riley's receipt of trading advice regarding other companies tends to prove his

participation in the overall conspiracy to share MNPI and to trade on the basis of the MNPI.

Evidence that Teeple obtained information about these companies prior to Riley's trades is

circumstantial evidence that tends to prove the "personal benefit" Riley is alleged to have

obtained in exchange for tipping Teeple with MNPI.  The strength of that circumstantial

evidence depends on a variety of other factors about which the Court currently is not

knowledgeable.  One way or the other, Riley is free to argue that he never received advice from

Teeple regarding these stocks; that he traded in the companies based on his own research; or that

any advice he received was unrelated to any information he gave Teeple regarding Foundry.  The

availability of those arguments, however, does not preclude the introduction of evidence that

could lead the jury to a contrary conclusion.

Other evidence of Teeple's bad behavior is also relevant as evidence of the existence and

scope of the charged conspiracy.  "Evidence of a defendant's . . . other crimes may [] be

admissible to provide background for the events alleged in the indictment, or to enable the jury

to understand the complete story of the crimes charged, or how the illegal relationship between

coconspirators developed."  *United States v. Reifler*, 446 F.3d 65, 91-92 (2d Cir. 2006) (internal

quotations marks, citations and alterations omitted).  Riley asserts that the crimes charged in the

indictment tell a complete story, precluding the necessity of the "background evidence."  Riley

relies on *United States v. Williams*, 585 F.3d 703, 707-08 (2d Cir. 2009), in which the Second

Circuit held that evidence of massive amounts of drugs, cash, and drug paraphernalia (*inter alia*)

"went far beyond what was necessary" to establish that the defendant possessed a firearm.  But

this case is a far cry from *Williams*.

Teeple's relationship with his alleged co-conspirators is directly at issue.  *See United*

*States v. Serrano*, No. 13-cr-58(KBF), 2014 WL 2696569, at *9 (S.D.N.Y. June 10, 2014).  "In a

conspiracy case, 'other acts' evidence is admissible as background information, to demonstrate the existence of a relationship of mutual trust, or to 'enable the jury to understand how the illegal relationship between the co-conspirators developed.'" *United States v. Lin Guang*, 511 F.3d 110, 121 (2d Cir. 2007) (quoting *United States v. Pipola*, 83 F.3d 556, 566 (2d Cir. 1996)).  All of these permissible purposes are served by the admission of evidence of Teeple's use of MNPI to trade in other companies, even though the fact of such trading is not direct evidence of Riley's criminal conduct.  Following Teeple's guilty plea, the Government has agreed substantially to limit the quantity of evidence of Teeple's trading in other companies that it will seek to admit. Gov't Opp. at 2.  At some point, admitting such evidence would be needlessly cumulative and serve no purpose; Riley's motion to exclude all of the proffered evidence is, however, denied.  If the government's evidence at trial becomes cumulative, Riley can re-raise his objection.[4]

### 2.   Evidence of Riley's sale and purchase of Marvell, Palm, sTec and Motorola is admissible

Riley moves to exclude evidence that he traded in Marvell Technology Group, Ltd., Palm, Inc., sTec, Inc. and Motorola, Inc. (the "benefit stocks").[5]  The Government seeks to use this evidence to prove that he obtained a personal benefit from transmitting MNPI that he possessed.  *See S.E.C. v. Obus*, 693 F.3d 276, 286 (2d Cir. 2012) (citing *Dirks*, 463 U.S. at 663-64)).  Riley asserts that his trades in these stocks cannot prove that he received a benefit for

---

[4]      In Teeple's motion to exclude this evidence, which Riley joined, he drew an analogy between what the Government is proposing here and activity in *United States v. Martoma*, No. 12-cr-973(PGG), 2014 WL 31191, at *3 (S.D.N.Y. Jan. 6, 2014).  The analogy is not apt.  In *Martoma*, the Government sought to introduce evidence of transactions analogous to the charged crimes – other occasions on which the same tippers provided MNPI to the same tippee.  The disputed evidence provided no new insight into what benefits the doctor-tippers gained or new details as to the scope of the conspiracy at issue.  *Id.*  In this case, the evidence of Teeple's unrelated transactions provides insight into the scope of the conspiracy that is not otherwise apparent.

[5]      Although Riley does not mention Motorola, *see* Riley Br. at 4-6, the Government revised its Bill of Particulars to include Motorola with the three corporations that Riley specifically mentions.  The Court assumes that Riley intends to include all similarly-situated stocks in his argument.

providing MNPI to Teeple because he never provided MNPI to Teeple; these transactions are unrelated to any alleged communications of MNPI; and evidence of Riley's trades in these stocks will result in a trial within a trial regarding the potential legitimate bases for his decisions to invest in those companies.  Riley Br. at 5.  Riley also asserts that the transactions yielded "little profit" and that the jury would speculate that he acquired MNPI about the benefit stocks.  None of these arguments is persuasive, particularly in light of the Government's indication that it will introduce, *inter alia*, evidence "that Riley traded in two of the benefit stocks while he was on the telephone with Teeple, and while he was also logged in to a Foundry database repository of financial information."  Gov't Opp. at 37.

The Court will not exclude circumstantial evidence of Riley's guilt on the basis of his protestations of innocence.  If Riley intends to argue that he will contest only the elements of insider trading involving providing MNPI and that he would stipulate to the "personal benefit" element[6] – which is far from apparent in his briefs – this argument is meritless.  "[T]he prosecution is entitled to prove its case by evidence of its own choice . . . a criminal defendant may not stipulate or admit his way out of the full evidentiary force of the case as the Government chooses to present it."  *Old Chief v. United States*, 519 U.S. 172, 186-87 (1997).  Riley's second point – that these trades are unrelated to any alleged passing of MNPI – is equally unavailing.  That is an argument he can make to the jury.  Assuming the Government has proof that Teeple possessed confidential nonpublic information regarding these companies at the time of Riley's trades in the benefit stocks, such trading appears to be circumstantial evidence of a *quid pro quo* between Riley and Teeple:  Riley provided MNPI regarding Foundry and Teeple provided stock advice regarding the benefit stock companies.  The jury could accept Riley's argument that any

---

[6]      To be guilty of insider trading, "a tipper must (1) tip (2) material non-public information (3) in breach of a fiduciary duty . . . (4) for personal benefit to the tipper."  *Obus*, 693 F.3d at 286.

advice he received from Teeple was unrelated to his alleged passes of MNPI, but the Court cannot exclude relevant circumstantial evidence based on Riley's protestation of innocence.

Nor does Riley's allegedly paltry profit from his trades undermine their relevance. The jury could find Teeple's advice to buy the stock was Riley's "personal benefit" for passing MNPI to Teeple, regardless of whether his resulting trades were particularly profitable. *See, e.g., United States v. Jiau*, 734 F.3d 147, 153 (2d Cir. 2013) (citing receipt of inside information as a "personal benefit" accruing to the tipper). Finally, Riley's argument that the jury would infer that the information that he received from Teeple regarding the benefit stocks was MNPI is unpersuasive. The Government "is not claiming that Riley's trading in the benefit stocks was itself illegal." Gov't Opp. at 37.

The trades themselves – subject to the Government introducing other evidence that tends to show Teeple advised Riley to make the trades or that Teeple possessed confidential nonpublic information that would have informed such advice – remain relevant and admissible.

### 3. Recorded conversations between Teeple and Motey are admissible

Riley moves to exclude several recorded conversations between Teeple and Motey, alleged co-conspirators. Riley's motion advances the theory that there were two "conspiracies" – one between Riley and Teeple, and another between Teeple and Motey. Riley Br. at 7 (citing *United States v. Bertolotti*, 529 F.2d 149, 157 (2d Cir. 1975)). When "there is sufficient proof of an ongoing connection between transactions, one conspiracy is not transformed into multiple conspiracies simply because it occurs in more than one stage and at different times," even if it encompasses "changes in membership." *United States v. Vazquez*, 113 F.3d 383, 387 (2d Cir. 1997) (quotation marks and citations omitted).

Here, the Government is tracing the MNPI that Riley allegedly passed to Teeple.  The Government alleges that the information traveled a specific course; evidence that Teeple was comfortable with the specific mechanisms and people involved in the alleged conspiracy makes it substantially more likely that he would share MNPI in a specific way, with a specific set of people.  The calls between Teeple and Motey aptly "show 'the basis for the trust between' the co-conspirators."  *United States v. Mercado*, 573 F.3d 138, 141 (2d Cir. 2009) (quoting *United States v. Brennan*, 798 F.2d 581, 590 (2d Cir. 1986)).

Riley asserts that the conversations in which he is not a participant will suggest his "guilt by association" and should therefore be precluded under Rule 403.  Riley relies on *United States v. Lyles*, 593 F.2d 182, 195-96 (2d Cir. 1979), in which the Government "had to introduce evidence on issues far removed from the ultimate issue of guilt," including proving that "a second conspiracy relationship" between co-defendants existed, and that "the taped conversations were held in the course of and in furtherance of the conspiracy."  593 F.2d at 195. Such collateral proofs are not necessary here; the calls between Teeple and Motey are evidence of the same conspiracy of which Riley is allegedly a part and are, therefore, admissible.  The Court believes that the probative value of the conversations is not outweighed by any unfair prejudice.

**Teeple's Motions Joined by Riley**

### 1. Investment Advisor A's response to the SEC on January 28, 2009, may be admissible to prove the existence of a conspiracy and a cover-up

Riley moves to preclude the introduction of Investment Advisor A's January 28, 2009 response to SEC inquiries into its Foundry trading activity.  The report – which the Government asserts was authored by Investment Advisor A's Portfolio Manager and a Senior Analyst (who are both allegedly coconspirators of Riley and Teeple), although the report itself is unattributed –

provided information regarding Investment Advisor A's trading in Foundry.  Investment Advisor A's Chief Compliance Officer, whom the Government intends to call as a witness at trial, transmitted the response, which identified the two authors as the "decision makers" behind the Foundry trades.

The SEC response would be hearsay if it were being introduced for the truth of the matters asserted therein.  But the Government has no intention of introducing it for the truth of the matters asserted.  To the contrary, the Government's position is that the Portfolio Manager and the Senior Analyst provided false information to the SEC in order to mislead it and to conceal the illegal insider trading.  Gov't Opp. at 24-25.  So long as the Government is able to establish that the coconspirators authored the SEC response, Investment Advisor A's responses to the SEC inquiry will be admissible.

### 2. Investment Advisor A's and Foundry's compliance policies are not precluded

Riley moves to exclude Investment Advisor A's and Foundry's compliance policies, which purport to define MNPI.  The Government asserts that the policies demonstrate the conspirators' culpable state of mind.  Because the policies' definitions of MNPI extend beyond the statutory definitions, Riley fears that a jury might be confused and apply this broader standard as it deliberates.  The proper remedy for this concern, however, is the use of a limiting instruction that informs the jury of the distinction between a violation of company policy and a crime and cautions the jury that it must rely on the Court's definitions of terms, not the definitions that may be contained in the companies' policies.  *Cf. United States v. Steinberg*, No. 12-cr-121(RJS), Dkt. 365 at 53.  Riley's offer to stipulate to the requisite knowledge that transmitting MNPI was improper does not change the analysis.  The Government is entitled "to

prove its case by evidence of its own choice," which here includes the introduction of the compliance policies.  *Old Chief*, 519 U.S. at 186.

   **3.  The Government may adduce evidence in support of liability under 18 U.S.C. § 2(b)**

   Finally, Riley moves to preclude evidence in support of the Government's theory of liability under 18 U.S.C. § 2(b).  The Court has already denied a motion to dismiss on substantially identical grounds.  *See* Dkt. 51 at 76.  The Government may introduce evidence to establish the defendants' guilt; this is not an opportunity to re-litigate the prior motion.  Riley's arguments to the contrary notwithstanding, the pending appeal in *United States v. Newman*, No. 13-1917 (2d Cir.), does not affect this analysis, as the question of tippee liability at issue in *Newman* is wholly irrelevant to whether a tippee, operating with scienter, commits a crime when, rather than trading himself, he causes another to trade on his behalf.  There is nothing about insider trading cases that alters established Section 2(b) jurisprudence.  *See*, *e.g., United States v. Gleason*, 616 F. 2d 2, 20 (2d Cir. 1979) ("[A] person who causes an innocent party to commit an act which, if done with the requisite intent, would constitute an offense may be found guilty as a principal even though he personally did not commit the criminal act.").

**CONCLUSION**

   For the above stated reasons, and with the above limitations, the Government's motions *in limine* are GRANTED, Riley's motions are DENIED, and Teeple's motions that Riley joined are DENIED.  The Clerk of the Court is respectfully directed to terminate Dkt. 22, 83, 84, 91, 98, 100, 102, 104, 108, 114, 116, 118, 121, 124, 149, 160, and 164.

**SO ORDERED.**

**Dated: July 14, 2014**
     **New York, NY**                                               **VALERIE CAPRONI**
                                                                    **United States District Judge**